

ZACHARY W. CARTER
*Corporation Counsel*

THE CITY OF NEW YORK
LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

MELANIE SPEIGHT
*Assistant Corporation Counsel*
Phone: (212) 356-2425
Fax: (212) 356-3509
mspeight@law.nyc.gov

January 22, 2016

**VIA ECF**
Honorable Brian M. Cogan
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:   Timonthy McMillan, et al., v. City of New York, et al., 15-CV-7181 (BMC)

Your Honor:

      I am an Assistant Corporation Counsel in the office of Zachary W. Carter, Corporation Counsel of the City of New York, representing defendants City of New York, Sergeant Alfieri, and Police Officer ("P.O.") Morris in the above-referenced matter. The parties will appear for an initial conference at 2:30 p.m. on January 29, 2015. In anticipation of the upcoming conference and in accordance with the Court's Order dated December 21, 2015, defendants write respectfully to apprise the Court of the facts and legal defenses at issue in this case. Defendants are aware that the Court requires a joint submission. Defendants have reached out to plaintiffs' counsel multiple times to confer about this submission and have received no response. Therefore, defendants regrettably submit this letter unilaterally.

      Briefly, by way of background, in the complaint plaintiffs Theodore Dukuly and Timothy McMillan (identified in the caption as Timonthy McMillan), allege that, on October 29, 2014, at approximately 4:45 a.m., they were near 96 Macdougal Street and "heading home." Plaintiffs claim that two unmarked police vans pulled up, and that "several police officers" approached and "assaulted" plaintiffs. Plaintiffs claim that plaintiff Dukuly "notified an officer" that he had recently undergone shoulder surgery and that his shoulder was still very sensitive. The officer allegedly disregarded Dukuly's warnings, grabbed Dukuly's hands, and cuffed Dukuly behind his back. This allegedly caused Dukuly "severe pain." Plaintiff McMillan alleges that as he complied with an officer's order to "back up," another officer punched him. Then, "several officers attacked plaintiffs, threw them to the ground and handcuffed them." According to plaintiffs, officers maced plaintiff McMillan and punched him in his head and

body, "causing plaintiff to become concussed." Then, according to plaintiffs, officers dragged them and transported them to the 6th Precinct. Plaintiffs allege that officers falsely informed the District Attorney's Office that plaintiffs had committed "various crimes." Plaintiffs allege that "all charges against McMillan were dismissed and sealed."

In light of these allegations, plaintiffs purport to establish the following claims: "1983 violations of 4th, 5th, and 14th Amendments"; false arrest; excessive force; assault and battery; malicious abuse of process; "due process/fair trial"; negligent hiring, training, retention, and supervision; intentional and negligent infliction of emotional distress; failure to intervene; and Monell liability.

Defendants deny plaintiffs' factual allegations. On Thursday October 29, 2014, defendants Sergeant Alfieri and P.O. Morris were members of a "cabaret" unit – a group that patrols within the West Village over the early morning hours when the neighborhood's many bars and late-night establishments close, to ensure that quality of life offenses are not committed and that citizens remain safe. At approximately 4:40 a.m., while driving along a residential portion of MacDougal Street, the officers noticed a group of four to five young men, including one man holding an open bottle of liquor. The officers exited their vehicle, approached the group, and spoke to the man in possession of the bottle of liquor. P.O. Morris began to write that man an open container summons. While P.O. Morris attempted to complete his interaction with that man, a member of the small group, plaintiff Dukuly, injected himself into the scene. Plaintiff Dukuly approached very close to the officers and began aggressively demanding an explanation for his friend or acquaintance's stop. Repeatedly, the officers asked Dukuly to back up. Repeatedly, plaintiff Dukuly refused.

Eventually, Dukuly's conduct escalated until officers finally decided to place him in handcuffs. Dukuly's physical refusal to be secured in handcuffs led to a struggle between him and the officers. Ultimately, officers were able to secure Dukuly in handcuffs. Upon information and belief, members of the crowd filmed the struggle. Plaintiffs' counsel confirmed that plaintiffs are in possession of video footage of the incident. On January 8, 2016, plaintiffs' counsel agreed to send this video to defense counsel so that the parties could discuss it in advance of their upcoming conference. However, the video footage has not yet been received.

During the struggle, plaintiff McMillan screamed, spit on the sidewalk, and threw garbage, compounding the disruption to the residents of the neighborhood. Based upon his conduct, McMillan was also placed under arrest. Plaintiffs Dukuly and McMillan, as well as the individual who was initially stopped for the open container, were all transported to the 6th Precinct. At the precinct, the originally-stopped-individual was issued a summons and released. Plaintiff McMillan was released from the 6th Precinct with a Desk Appearance Ticket after spending four hours and 38 minutes in custody. Plaintiff Dukuly was transported to Central Booking. Upon information and belief, he was arraigned after spending 18 hours and 24 minutes in custody. Plaintiff Dukuly's prisoner arraignment record suggests that he pled guilty to an offense at arraignment. However, at this stage, the outcome of his case is not known to defendants.

Based upon the facts surrounding plaintiffs' arrests, defendants contest plaintiffs' alleged legal claims. Several of plaintiffs' claims fail to plausibly allege cognizable claims and

should be dismissed pursuant to Fed. R. Civ. P. 12(c). For example, plaintiffs' purported Monell claim is based entirely upon boilerplate allegations. See Bradley v. City of New York, No. 08 Civ. 1106 (NGG), 2009 U.S. Dist. LEXIS 51532, at *8-9 (E.D.N.Y. June 18, 2009) (citing Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993)) ("the mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference"). Plaintiffs' purported "negligent hiring/training/retention/supervision of employment services" is equally specious. In addition, plaintiffs' intentional infliction of emotional distress claim cannot be maintained because the conduct alleged by plaintiffs is encompassed within plaintiffs' alleged traditional tort claims. Moore v. City of New York, 219 F. Supp. 2d 335, 339 (E.D.N.Y. 2002) (granting defendants summary judgment and finding that "no intentional infliction of emotional distress claim will lie where the conduct underlying the claim falls within the ambit of traditional tort liability"). Finally, the complaint contains no factual allegations sufficient to support plaintiffs' alleged malicious abuse of process and "due process/fair trial" claims.

The thrust of plaintiffs' allegations involve their alleged claims for false arrest and excessive force. Defendants will argue that plaintiffs' arrests were supported by probable cause. Jenkins v. City of N.Y., 478 F.3d 76, 84 (2d Cir. 2007) (probable cause is a complete defense to a § 1983 false arrest claim); Petway v. City of New York, No. 12-CV-279 (ARR) (LB), 2014 U.S. Dist. LEXIS 28361, at *20 (E.D.N.Y. Mar. 4, 2014) ("[u]nder New York Penal Law § 195.05, interference in the arrest of a third party may constitute OGA…Probable cause to arrest for OGA also may be found where, for example, an individual "refus[es] to obey orders to leave a premises, to exit a vehicle, to 'step back' from an accident scene or to keep away from an area where a disturbance is taking place.") At a minimum, the arrests were supported by arguable probable cause such that defendants are entitled to qualified immunity. Ackerson v. City of White Plains, 702 F.3d 15, 21 (2d Cir. 2012) ("Qualified immunity is a complete defense to false arrest claims."). With respect to plaintiffs' alleged force claims, particularly in light of plaintiff Dukuly's violent and aggressive behavior and plaintiff McMillan's resistance to an officer's, attempt to secure him in handcuffs, defendants used a level of force that was reasonable under the circumstances and, therefore, lawful. Notably, plaintiff Dukuly has not provided a medical release in this action and, therefore, likely concedes that he did not sustain injuries in the course of his interaction and has likely not sought medical treatment. Plaintiff McMillan has provided medical releases for two facilities for treatment allegedly sought on October 29, 2014 and October 30, 2014. Defendants have not yet received hospital records of these visits.

In light of these considerations, defendants will likely move to partially dismiss the complaint pursuant to Fed. R. Civ. P. 12(c). Defendants anticipate that, after the conclusion of discovery, they will move for summary judgment with respect to all remaining claims.

Thank you for your consideration herein.

Respectfully submitted,

/s/
Melanie Speight
*Assistant Corporation Counsel*

3

cc: <u>VIA ECF</u>
Amy Rameau
*Plaintiffs' Counsel*
The Rameau Law Firm
16 Court Street, Suite 2504
Brooklyn, NY 11241
718-887-5536
amywmrameau@hotmail.com